IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES R. OSBOURN, )<br>)<br>Defendant. )<br>)<br>_____ ) | Case No. 05-M-9303-M-1 |

## MEMORANDUM AND ORDER

This matter is before the court on defendant's motion to strike testimony and to suppress the results of defendant's breath test. (Doc. 9). For the reasons set forth below, the motion shall be DENIED.

### Background

On August 14, 2005, defendant's car was stopped by officers of the Fort Riley Military Police at a vehicle inspection area where officers detected the odor of alcohol. After a brief investigation defendant was transported to the Provost Marshal's Office where he was advised of the Kansas implied consent law and observed for a period of twenty minutes before the Intoxilizer 5000 breath test was administered to him. Pursuant to Provost Marshal's Office policy, the twenty minute observation period was videotaped. The test

<05-mj-09303-KMH   Document 13   Filed 03/17/06   Page 2 of 6

revealed a .219 percent concentration of alcohol in defendant's breath.

Plaintiff was charged with (1) operating a motor vehicle with an alcohol concentration of .08 or more in violation of K.S.A. 8-1567(a)(2) or, in the alternative, (2) operating a motor vehicle while under the influence of alcohol to a degree that rendered him incapable of safely driving in violation of K.S.A. 8-1567(a)(3). Defendant timely moved for and was granted an order for production of the videotape. (Doc. 8). However, the videotape has been "recorded over" or lost and is now unavailable. As noted above, defendant moves to prohibit any testimony from the officers concerning the events that were videotaped and to suppress the breath test result.

**Analysis**

The standards for evaluating the destruction or loss of evidence by the police are well established:

> Under the Due Process clause of the Fourteenth Amendment, the Supreme Court has developed "'what might loosely be called the area of constitutionally guaranteed access to evidence.'" California v. Trombetta, 467 U.S. 479, 485 (1984)(quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982)). The Court has specified that, to the extent the Constitution imposes a duty upon the government to preserve evidence, "that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense"– i.e., evidence that is constitutionally material. Id. at 488-89. To be constitutionally material, evidence must: (1) "possess an exculpatory value that was apparent [to the police] before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489. The mere possibility that lost or destroyed evidence could have exculpated a defendant is not sufficient to satisfy Trombetta's requirement that the exculpatory value be "apparent" to the police before destruction.

> Arizona v. Youngblood, 488 U.S. 51, 56 (1988).  Additionally, "**if the exculpatory value of the evidence is indeterminate** and all that can be confirmed is that the evidence was 'potentially useful' for the defense, then a **defendant must show that the government acted in bad faith in destroying the evidence.**"  Bohl, 25 F. 3d at 910 (citing Youngblood, 488 U.S. at 58).  "**[M]ere negligence** on the government's part in failing to preserve such evidence **is inadequate for a showing of bad faith**."  Id. at 912.

United States v. Parker, 72 F.3d 1444, 1451 (10th Cir. 1995)(emphasis added).[1]

Applying these principles, the court concludes that defendant has not demonstrated that the videotaped evidence was constitutionally material under Trombetta.  The purpose of the tape was to show that defendant did not put foreign objects or food into his mouth in an attempt to invalidate the breath test.  Plaintiff makes no suggestion that he put any foreign objects in his mouth during the deprivation period before taking the test; thus, the "exculpatory" nature of the video tape is extremely marginal.

At best, the exculpatory value of the video tape is indeterminate; therefore, defendant must demonstrate "bad faith" on the part of the government in destroying the evidence.  Youngblood, 488 U.S. at 58.[2]  Defendant proffers no specific evidence of bad faith and

---

[1] Defendant asserts that the government's failure to produce the statements of the defendant and witnesses (in this case, in the form of a videotape) is a violation of the Jencks Act, 18 U.S.C. § 3500(d).  However, because the videotape is no longer available, Trombetta and Youngblood provide the appropriate standards for evaluating the destruction or loss of evidence.

[2] Defendant contends that the tape would be "potentially useful" to cross examine the officers.  Under Youngblood, defendant must still show bad faith by the government in the destruction of the evidence.

simply argues that law enforcement officers have a duty to "follow rigorous and systematic procedures designed to preserve all discoverable evidence." State v. Eubanks, 2 Kan. App. 2d 262, 264 577 P.2d 1208 (1978). However, defendant's reliance on Eubanks is misplaced because the Kansas Court of Appeals did not hold that the failure to preserve all evidence is tantamount to a finding of "bad faith." Instead, the appellate court considered the context and circumstances surrounding the destruction of handwritten field notes and found no "bad faith" by the officer. More importantly, Eubanks has been pre-empted by the standards set forth in Youngblood and Trombetta.

A more relevant ruling which neither party cited is the unpublished opinion by United States Magistrate Judge Reid in United States of America v. Tamara Jackson, Case No. 01-M-9207-01, Memorandum and Opinion, filed December 20, 2001. Jackson was charged with driving under the influence and, just as happened in this case, the videotape made while Jackson was being held at the Provost Marshal's Office could not be located. No party was able to explain the tape's disappearance other than to speculate that it had been lost or inadvertently erased. Judge Reid noted that the issue of a missing videotape had been before him on two prior occasions and that the court had orally admonished the prosecutor that "if in any future case a videotape was destroyed, lost or taped over, the court would consider the loss of the videotape to be in bad faith."[3] Based on the court's prior admonition and the government's failure to explain the disappearance of the tape, Judge Reid found "bad faith"

---

[3] The names, case number, and dates of the two prior cases were not specified.

and granted Jackson's motion to dismiss.[4]

The present case apparently raises the fourth instance of a missing videotape by the military police at Fort Riley. Although the loss of a videotape is quite troubling, the court is not persuaded that the government's inability to produce the tape mandates an automatic finding of "bad faith." Youngblood, Trombetta, and Parker place the burden of showing "bad faith" **on the defendant** and there has been no showing that four missing videotapes over the period of 19 years is statistically significant or otherwise establishes a pattern and practice of bad faith destruction.[5]

Moreover, the court is reluctant to adopt a finding of "bad faith" *per se* based on prior hearings and rulings at Fort Riley. There has been no showing that the prosecutor in this case or the law enforcement officials handling defendant's videotape had actual notice of Judge Reid's prior rulings and the Jackson opinion was an unpublished decision.[6] Under the

---

[4] Judge Reid heard cases at Fort Riley from December 1987 to June 2004.

[5] Obviously, if defendant were able to show that videotapes were frequently lost or destroyed, his argument of bad faith would be more persuasive. The fact that Judge Reid last dealt with this issue in 2001 does not suggest an established pattern of bad faith destruction of evidence.

[6] The turnover in the prosecutor's office is significant. During the most recent two-year period the Special Assistant U.S. Attorney (also usually Army Captains) assigned to prosecute federal criminal cases has changed three times. Moreover, the fact that *neither* party cited the Jackson opinion or were aware of its holding highlights the problem of imposing some sort of prior notice based on an earlier, unpublished opinion. The court discovered the Jackson opinion by chance and provided a copy to counsel during oral argument.

circumstances, the court declines to impose some sort of constructive notice of Judge Reid's prior rulings on either the prosecutor in this case or the military police.

In summary, the court is not persuaded that defendant has carried his burden of showing that the government acted in bad faith. Mere negligence in failing to preserve the evidence is inadequate for a showing of bad faith. Parker, 72 F.3d at 1451. Accordingly, defendant's motion shall be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to strike testimony and to suppress the breath test **(Doc. 9)** is **DENIED.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 17th day of March 2006.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge